IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ATLAS IP, LLC, <br><br>       Plaintiff, <br><br> v. <br><br> SOUTHERN COMPANY, a Delaware corporation, and GULF POWER COMPANY, a Florida corporation, <br><br>       Defendants. | Civil Action No.: _____ <br><br> **DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Atlas IP, LLC ("Atlas") brings this action and makes the following allegations of patent infringement relating to U.S. Patent No. 5,371,734 ("the '731 Patent") against Defendants Southern Company, Inc. and Gulf Power Company ("Defendants") as follows:

### NATURE OF ACTION

1. This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

### THE PARTIES

2. Atlas IP, LLC is a limited liability company organized and existing under the laws of the State of Florida, having a principal place of business at One SE Third Avenue, Suite 200, Miami, Florida 33131.

3. Defendant Southern Company ("Southern") is a Delaware corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 30 Ivan Allen Jr. Blvd. NW, Atlanta, GA 30308. Defendant Gulf Power Company ("Gulf")

is a Florida corporation organized and existing under the laws of the State of Florida and having a place of business at 500 Bayfront Parkway, Pensacola, FL 32520. Gulf Power Company is a wholly owned subsidiary of Southern Company. Defendants shall be collectively referred to herein as "Southern" or "Defendant."

## JURISDICTION AND VENUE

4.     This action arises under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has exclusive subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a)

5.     Upon information and belief, this Court has personal jurisdiction over Defendant in this action because Defendant has committed acts within the State of Florida giving rise to this action and has established sufficient minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Personal jurisdiction also exists specifically over Defendant because it, directly or through subsidiaries or intermediaries, makes, uses, offers for sale, sells, imports, advertises, makes available and/or markets one or more products and/or services within the State of Florida that infringe the patent-in-suit, as described more particularly below.

6.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §1391(b) and (c) and §1400(b).

## BACKGROUND

7.     Atlas is the owner by assignment of U.S. Patent Nos. 5,371,734 ("the '734 patent") entitled, *Medium Access Control Protocol for Wireless Network*, the application for which was filed in January 1993. (Exhibit A)

8. The invention of the '734 patent is directed, *inter alia*, to "a reliable medium access control (MAC) protocol for wireless, preferably radio frequency (RF), LAN-type network communications among a plurality of resources…." '734 patent, col. 5, lines 10-14.

9. Representative claim 1 of the '734 patent reads:

A communicator for wirelessly transmitting frames to and receiving frames from at least one additional communicator in accordance with a predetermined medium access control protocol, the communicators which transmit and receive the frames constituting a Group, each communicator including a transmitter and a receiver for transmitting and receiving the frames respectively, the medium access control protocol controlling each communicator of the Group to effect predetermined functions comprising:

designating one of the communicators of the Group as a hub and the remaining the communicators of the Group as remotes;

the hub establishing repeating communication cycles, each communication cycle having intervals during which the hub and the remotes transmit and receive frames;

the hub transmitting cycle establishing information to the remotes to establish the communication cycle and a plurality of predeterminable intervals during each communication cycle, the intervals being ones when the hub is allowed to transmit frames to the remotes, when the remotes are allowed to transmit frames to the hub, and when each remote is expected to receive a frame from the hub;

the hub transmitting a frame containing the cycle establishing information which establishes both an outbound portion of the communication cycle when the hub transmits frames to the remotes and an inbound portion of the communication cycle when the remotes transmit frames to the hub, the frame containing the cycle establishing information also establishing the predetermined intervals during the outbound and inbound portions of the communication cycle when each remote is allowed to transmit and receive;

the remotes powering off their transmitters during times other than those intervals when the remote is allowed to transmit frames to the hub, by using the cycle establishing information transmitted from the hub; and

the remotes powering off their receivers during times other than those intervals when the remote is expected to receive a frame from the hub, by using the cycle establishing information transmitted from the hub.

10. Defendant infringes the '734 through, for example, its use of Sensus FlexNet Communication System, Sensus iCon Meters, FlexNet base stations and other power distribution equipment. The term "power distribution equipment" generally includes Field Logic Controllers, Sensus Smart Gateways, Load Control Modules, Remote Telemetry Modules, NaviComm or Remote Capacitor Banks, which facilitate the distribution of power and allow reports and control of the equipment for use by the Defendant.

11. Prior to January 2013, Defendant installed among its customer base FlexNet base stations and Sensus iCon Meters and power distribution equipment among others (hereinafter nodes), that send messages at predetermined programmable intervals over a wide area network ("WAN") using Sensus' FlexNet communication protocol. The nodes may also be queried on an ad hoc basis and programmed.

12. The communication between the nodes and base station over the WAN occurs over the licensed 896-960 MHz band.

13. The nodes and base stations communicate over the WAN ("Accused Products") and are designed to form a communication group. Additional communications can occur via cellular relays, meters and power distribution equipment, and home area networks (HAN).

14. The Accused Products each include a transceiver consisting of a transmitter and receiver that transmits and receives packets of data.

15. The Accused Products operate to transmit and receive information about customer water, gas or electricity usage and about network conditions.

16. The Accused Products form a group of at least one device operating in remote mode (*e.g.*, iCon Meter), and one device operating in base mode (FlexNet base station for example). For example, in a FlexNet network, a FlexNet base station interrogates nearby iCon Meters. The meter

4

acknowledges the command and provides the data to base station. In some instances, the meters may report to Smart Gateways or to Remote Telemetry Modules which then get forwarded to the base stations and utility.

17. The base station transmits at least one frame of data to the meters or power distribution equipment to request data that initiates a communication session, and which allows the receiving nodes to calculate the duration of the communication session and its constituent intervals before the nodes transmit to the base station, during the communication session.

18. During the communication session, the base station and the nodes will transmit and receive packets of data to and from one another consisting of an interrogation message from the hub to the nodes, an acknowledgement and utility usage and machine state data from the node to the base station.

19. During the transmission period, the node expects to receive a packet of data, which come in the form of a query.

20. During the reception period, the node sends packets of data to the querying device, *e.g.,* base station, including utility usage and machine state data.

21. The base stations et al. establish communication cycles with the nodes that repeat (*e.g.*, hourly). During each such communication cycle, there are intervals during which the base stations or the intermediary point and the node transmit and receive frames. For example, as depicted in Figure 3 of the '734 patent below, the read request and power status check request messages are frames. These frames contain information establishing the communication cycle, including the interval in which a read request or power status check request message is sent from the base station to the node (*i.e.*, the outbound portion of the communication cycle), and the interval in which a read message or power status message is sent from the node to the base station (*i.e.*, the inbound portion of the communication cycle).



22. The base station determines whether to power off its receiver during times other than those when it is receiving data during a communication session. Likewise, the nodes determine whether to power off its transmitter during times other than those when it is transmitting data during a communication session. For example, the nodes can communicate with the base station using half-duplex radio frequency communications. In half-duplex communications, the

6

base station power down the receiver circuitry of the radio transceiver during the interval of the communication cycle in which it is transmitting the read and power status check request messages. Once the node has transmitted data packets to the base station, if its receiver has been powered down, it activates its receiver to await the reception of data from the base.

23. A chart showing that the Accused Products literally satisfy each limitation of claim 1 of the '734 patent is attached hereto as Exhibit B.

### Count I – Infringement of the '734 Patent

24. Atlas hereby incorporates by reference paragraphs 1-23.

25. Defendant's base stations and nodes described herein directly infringed the claims of the '734 patent before the expiration thereof, including but not limited to, representative claim 1 above.

26. Defendant is liable for infringement of one or more claims of the '734 patent pursuant to 35 U.S.C. § 271, either literally or under the Doctrine of Equivalents.

27. As a result of Defendant's wrongful conduct, Atlas has been damaged in an amount to be determined at trial, but in no case less than a reasonable royalty.

28. Atlas has not made or sold, or had made or sold for it, any product covered by the claims of the '734. Of Atlas's predecessors in interest in the ownership of the '734 patent, only Digital Ocean Inc. made or sold, or had made or sold, products covered by the claims of the '734 patent. Digital Ocean marked all such products with the '734 patent number.

### REQUEST FOR JURY TRIAL

29. Atlas requests a jury trial on all issues for which a jury trial is permissible.

### PRAYER

WHEREFORE, Atlas respectfully requests that this Court enter the following prayer for

relief:

A. A judgment in favor of Plaintiff Atlas IP, that Defendant has infringed, either literally and/or under the doctrine of equivalents, the '734 patent;

B. An award of damages resulting from Defendant's acts of infringement in accordance with 35 U.S.C. § 284;

C. A judgment and order requiring Defendant to provide accountings and to pay supplemental damages to Atlas including, without limitation, prejudgment and post-judgment interest; and

D. Any and all other relief to which Atlas may show itself to be entitled.

Respectfully submitted,

__s/ Michael C. Cesarano_____
Michael C. Cesarano
Fla. Bar No. 297216
E-Mail:  mccesarano@yahoo.com
Michael C. Cesarano, P.A.
90 Edgewater Dr., Unit 1209
Coral Gables, FL 33133
Tel. 305-778-5155
Attorneys for Plaintiff Atlas IP, LLC